## CITY OF DENVER V. VERNIA.

| | |
|---|---|
| 8 | 399 |
| 10 | 424 |
| 11 | 250 |
| 8 | 399 |
| 18 | 125 |
| 8 | 399 |
| 20 | 17 |
| 8 | 399 |
| 10a | 418 |
| 8 | 399 |
| 30 | 109 |
| 8 | 399 |
| 33 | 116 |
| 36 | 117 |

1. Under section 413 of the Code of Civil Procedure, exceptions taken to opinions and decisions of the district and county courts, in which the parties agree that the matters of fact and of law may be tried by the court, shall be deemed to have been properly taken and allowed, and error may be assigned thereon whether it relates to receiving or rejecting testimony improperly or to the final judgment.

2. Under the ordinances of the city of Denver it is made the duty of the city engineer to furnish the grade of a street upon the application of any person desiring to construct a building on such street, where the grade has been established, and the person failing to

make such application before commencing the erection of such building is liable to fine.

3. Under section 15 of article 2 of the constitution, a party may not recover damages for every possible injury to his property that may be occasioned by a public improvement.

4. The owner must be presumed to have known what the established grade was when he purchased, and to have purchased with reference thereto, and must be presumed to have known what the grade was when he erected his improvements, and to have built with reference to it.

5. Where it was the duty of the city to have reduced the street to the established grade of the sidewalk at or about the time it compelled the construction of a sidewalk several feet below the former surface of the street, *held*, that the city might be liable for any actual damage sustained by the abutting lot-owner during the interval between the excavating of the sidewalk and the lowering of the street to the same grade.

*Appeal from County Court of Arapahoe County.*

THE facts are stated in the opinion.

Messrs. FRANK TILFORD and JOHN C. STALLCUP, for appellant.

Mr. G. H. GRAY, for appellee.

BECK, C. J.    This is an action against a municipal corporation for damages to property fronting upon a public street, which damages are alleged to have been caused by the grading of a sidewalk immediately in front of such property.    The trial was to the court without a jury, and the finding and judgment were in favor of the plaintiff below, Thomas Vernia; the amount thereof being the sum of $1,200.    Exceptions were saved to the finding and judgment, which we deem sufficient to authorize us to review the case upon the law, under section 413 of the Code of Civil Procedure, which section provides as follows:

"Exceptions taken to opinions and decisions of the district and county courts, upon the trial of causes, in which the parties agree that both matters of law and

fact may be tried by the court, shall be deemed and held to have been properly taken and allowed; and the party excepting may assign for error before the supreme court any decision or opinion so excepted to, whether such exception relates to receiving improper, or rejecting proper, testimony, or to the final judgment of the court upon the law and the evidence."

The plaintiff, Vernia, alleges in his complaint that on or about December 23, 1881, he purchased two lots fronting on Larimer street, in the city of Denver, between Twenty-fifth and Twenty-sixth streets, and that he afterwards erected two brick store buildings upon the surface of said lots, and fronting upon said street. He alleges that the street had been graded slightly at that point prior to his purchase, and that a horse-railway line had been established in the center of the street, and that the line so established was being operated at that time, and continued to be operated, on the same grade up to the bringing of this suit. This grade was nearly on a level with the surface of his lots. He states various acts of the city which induced him to believe that the grade of the street, at the time of his purchase, and at the time of erecting his buildings, was the established grade of said street at which it would be permanently maintained, and that, so believing, he made his improvements accordingly; that about the month of April, 1882, which was after his buildings had been erected, the city compelled him to lay a stone sidewalk in front of said lots and buildings, on a grade about three feet feet below the natural surface of his lots, and about the same depth below a board sidewalk·previously laid in front of his buildings. He further avers that said grade was much below the grade at which the street was then being maintained.

The plaintiff alleges that the excavation of this·cut or grade rendered ingress from the street and sidewalk to his buildings, and egress therefrom to the sidewalk and

street, difficult; that it could only be effected by steps which he was compelled to erect, and that his property was rendered almost worthless for building purposes by this excavation; that the sidewalk was "laid so far below the rest of the street, and the lots adjoining, that the drainage, wash and surface water drift from the street and lots adjoining runs and collects there, cutting off travel, and emitting offensive odors and the germs of disease, rendering the lots of the plaintiff unfit for use, and less valuable for residence, and far less valuable for business purposes, and every other purpose." He also alleges that the defendant did all these acts wantonly, causelessly and wrongfully, to the plaintiff's injury, and that the doing of said acts has damaged the plaintiff's lots and improvements in the sum of $2,000.

The defense set up by the city was that the grade of said street had been established by the city council several years before the plaintiff's purchase of the property, and that the grade so established had never been altered; that although the street at that point had never been excavated to the established grade, yet the sidewalk, the excavation of which is the subject-matter of complaint, was laid on the established grade; that the grade so fixed was about three feet below the natural surface of the streets and sidewalks; of which facts the plaintiff had notice at the time of his purchase and the making of his improvements. Defendant denied that the property was rendered worthless or less valuable by this improvement; denied that the city did, or caused any acts to be done, wantonly, carelessly, unskilfully or wrongfully, and denied that the plaintiff was entitled to any damage or relief.

The character of the plaintiff's proof was to show how much less his property was worth after the laying of the sidewalk than before it was laid, or, in other words, how much permanent damage he had sustained by this excavation.

At the close of the plaintiff's testimony, defendant moved for a non-suit, on the ground that the buildings for which damages were claimed had not been built on the established grade. The motion was denied, and an exception saved.

On the part of the city, it was proven that the grade of this street was established by the city council in 1875, and had never since been altered; that the sidewalk was, by the direction of the defendant, laid at this grade; that plaintiff had made no inquiry of the city officers previous to making his improvements, or prior to his purchase, whether a grade had been established or not. It was also proven that at the time of making the plaintiff's improvements the following city ordinance was in force, viz.:

"Before any person or persons shall commence the erection or construction of any building upon the line of any street or public highway within the city of Denver, where the grade has been already established, he or they shall apply to the city engineer for the grade of said street, and thereupon it is made the duty of the city engineer to furnish to such person or persons the grade of such street or public highway; and if any person shall violate the provisions of this section he shall, upon conviction, be fined not less than ten nor more than fifty dollars."

It is apparent from the record that the cause was tried by the court upon the theory that the lowering of the sidewalk to grade was a permanent injury to the plaintiff's lots and buildings, for which he was entitled to damages. The conduct of the trial, and the character of the inquiries made of the witnesses, both by the plaintiff's counsel and by the court, show that the case was tried upon this view of the law. This same theory is now relied upon to sustain the judgment. It is contended that any excavation of the street or sidewalk made after the plaintiff's purchase, and particularly after the making of

his improvements, gave him a right of action for permanent injury thereto, within the meaning of the constitution and laws of this state, irrespective of the fact of the plaintiff's negligence in the premises. The constitutional provision relied on is found in section 15 of article 2: "Private property shall not be taken or *damaged* for public or private use without just compensation."

Counsel goes to the extent, as we understand him, of claiming that the excavating of a public street to any grade below the natural surface of the abutting lots gives a right of action under the constitution in all cases to the proprietor of such property. The provision above quoted is incorporated in the constitutions of several states, and numerous cases exist in which it has been construed, in most of which the constructions given are in harmony with each other. The legal effect of this provision was thoroughly considered by this court in the case of *City of Denver v. Bayer*, 7 Colo. 113, and the cases bearing upon the question were reviewed in the opinion of the court, written by Mr. Justice Helm. It was there held that any interference with a street which permanently diminishes the value of the premises of a citizen is as much a damage under the constitutional provision as though such damage was caused by a direct physical injury thereto. But a distinction was drawn in respect to the character of claims made for damages; some affording a right of action under the law, while as to others no such right existed — the latter class coming within the maxim of *damnum absque injuria*.

By way of illustrating the views of the court in respect to damages for street improvements, it was said: "That our position might not be misunderstood, we have, at the risk of being charged with *obiter dictum*, suggested that, as at present advised, we think that for injuries caused by a reasonable change or improvement of the street, by the council, in a careful manner, the abutting owner should not recover." This is undoubtedly a cor-

rect legal proposition.  It is open, of course, to construction as to its application to a given case.  The Illinois constitution contains the same provision in respect to damaging private property for public use as does our own.  The case of *Rigney v. City of Chicago*, 102 Ill. 83, is the latest expression we have seen of the views of the supreme court of that state upon this subject.  The court therein says:

"While it is clear that the present constitution was intended to afford redress in a certain class of cases for which there was no remedy under the old constitution, yet we think it equally clear that it was not intended to reach every possible injury that might be occasioned by a public improvement."

The lamented T. Lyle Dickey, then chief justice of that court, in a concurring opinion, expressed the following views upon this point:

"It is not every change of grade made in a street, which may in effect impair the value of the lot in its vicinity, which is a violation of the right of the proprietor thereof.  Such changes in a street as it may reasonably be supposed might be made for the improvement of the public highway, the purchaser of a lot upon a street must be assumed to have consented to when the purchase was made.  The making of such changes is therefore no invasion of his right in that regard."

The supreme court of California, also, in respect to a like constitutional provision, entertains substantially the same views that we do as to the proper construction of the provision.  In *Reardon v. City and County of San Francisco*, 5 West Coast Rep. pp. 766, 767, the court say:

"We are of opinion that the right assured to the owner by this provision of the constitution is not restricted to the case where he is entitled to recover as for a tort at common law.  If he is consequently damaged by the work done, whether it is done carefully and with

skill or not, he is still entitled to compensation for such damage under this provision. This provision was intended to assure compensation to the owner, as well where the damage is directly inflicted, or inflicted by want of care and skill, as where the damages are consequential, and for which damages he had no right of recovery at the common law."

This is the view generally entertained by the courts as to the effect of the constitutional provision under consideration. But it is not broad enough to cover every case of direct or consequential injury to property, as is shown by the exceptions almost invariably inserted in the opinions of the courts. In the case last cited the learned Justice Thornton, speaking for the court, says:

"We do not intend to say, nor do we think, it extends to such damages as the owner of the property injured sustains in common with the other abutters on the street, or the general public, but only to that special injury which he receives over and above such common injury."

It is unnecessary to cite other cases. The cases above referred to contain abundant citations of authorities in support of the views above quoted.

It is clear, we think, that the general rule of decision giving damages to the owner of property abutting upon a public street for injuries thereto, caused by the making of a public improvement, does not apply to the case before us. The elements of damages claimed here clearly were — *First*, the fixing of the grade of the street three feet below the surface of the plaintiff's lots; *second*, the reducing of the sidewalk to that grade after the plaintiff's improvements had been made; *third*, the consequential injuries experienced by reason of the work itself, and the careless and wrongful manner in which it was done. As previously stated, the basis of recovery claimed and allowed for the alleged injuries was that of permanent injury to the property of the plaintiff. The inquiries,

both of his counsel and of the court, were as to the diminution in value of the premises,— how much less was their market value after the grading than before.

It is unnecessary to consider the question whether the establishing of such a grade, and carefully reducing the street thereto, would present such a case of injury to the abutting lot-owners who had purchased property on the street and erected improvements thereon *before* such grade was established, but with reference to an existing grade previously fixed by ordinance, and the street reduced thereto, for no such case was here made out. The grade was fixed by the proper authorities long before the plaintiff's purchase of the property, although the street had not been lowered thereto. It was the plaintiff's duty to have inquired of the proper city officers, before his purchase, what the change was; when, if found objectionable for the purposes to which he desired to appropriate the property, he could have chosen a more eligible site. Especially was it his duty to have ascertained the grade before erecting his improvements. To say, in the face of the city ordinance above set out, that he was justified in relying upon certain acts and appearances that the grade then existing was the fixed and permanent grade, is a proposition that cannot be entertained. He must be presumed to have known what the established grade was when he purchased, and to have purchased with reference thereto; he must also be presumed to have known what this grade was when he erected his improvements, and to have built with reference thereto. The plea of ignorance of the fact cannot, under the circumstances of this case, prejudice the municipality.

There is, therefore, in these elements of the claim prosecuted, no such direct disturbance of rights enjoyed in connection with property giving to it additional value, and which disturbance causes special damage in excess of that shared by the public generally, as to authorize a recovery. The only element of the plaintiff's claim upon

which he is entitled to recover is the unreasonable and careless manner in which the grading was done. The amount of damages thus sustained, however, was not proven, and, so far as the record shows, all proof relating to such damages seems to have been adduced in support of the proposition that the premises were permanently diminished in value. The city reduced the sidewalk in front of the plaintiff's premises to grade in the month of April, 1882, leaving the street so far above the established grade as to render the premises difficult of access, and the sidewalk so laid subject to overflow by water, etc.

This condition of the street and sidewalk continued up to the commencement of this suit, February 26, 1883, a period of about ten months. It was the duty of the defendant to have reduced the street to the established grade at or about the same time that it compelled the sidewalk to be so laid. For its failure so to do it is liable for the actual damages sustained by the plaintiff during the interval between the excavating of the sidewalk and the lowering of the street to the same grade. The judgment is reversed and the cause remanded for further proceedings.

*Reversed.*